UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE JASON MILLER,<br><br>           Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br><br>           Defendant. | Civil No. 13-CV-238 BEN (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. Nos. 21 and 23.) |

Plaintiff Steve Jason Miller ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("Commissioner" or "Defendant") decision to deny his claim for Disabled Adult Child benefits. (Dkt. No. 1) This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, and that Defendant's cross motion for summary judgment be **GRANTED**.

///
///

# I. BACKGROUND

## A. Evaluation of a Disability Under the Social Security Act

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months. 42 U.S.C. § 423(d). An individual claiming disability must prove he was permanently disabled or subject to a condition which became disabling prior to his last insured date. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Social Security regulations establish a five-step sequential evaluation procedure for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, it must be determined whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, then it must be determined whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the third step is to ascertain whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she will be found disabled. *Id.* If the impairment does not meet or equal a Listing, it is then determined whether the applicant retains the residual functional capacity ("RFC") to perform his or her past relevant work (step four). 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, it must be considered whether the applicant can perform other work (step five). 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.* In making the determinations, "the ALJ [Administrative Law Judge] has a special

duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

### B. Procedural History

Plaintiff filed an application for Disabled Adult Child disability insurance benefits on June 20, 2011. Administrative Record ("AR") 84. He alleges his condition rendered him disabled on July 1, 1989. AR 32. The application was initially denied on September 6, 2011, and denied again upon reconsideration on November 18, 2011. AR 84-85. On December 2, 2011, Plaintiff filed a written request for hearing. AR 100.

An ALJ held a hearing on August 16, 2012. AR 27-83. Plaintiff, three doctors, and a vocational expert testified at the hearing. *Id.* Based on the testimony and documentary evidence, the ALJ issued a decision denying the applications for benefits. AR 13-21. The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became final. AR 4.

Plaintiff filed this complaint for judicial review of Defendant's final decision. (Dkt. No. 1.) He argues the ALJ committed reversible error by improperly discrediting the testimony and opinions of three doctors. (Dkt. No. 21-1 at 9-11.[1]) He asks this Court to reverse the ALJ's decision and remand for calculation of benefits or for further administrative proceedings. *Id.* at 11.

### C. Relevant Documentary Evidence

On July 28, 1989, Dr. Allan Rabin admitted Plaintiff, then eighteen years old, to VillaView Community Hospital. AR 413-14. Dr. Rabin had been called by Plaintiff's mother, who reported Plaintiff was being physically abusive towards her and had locked her out of the house. AR 413. Plaintiff was agitated, had not been sleeping, had episodes of euphoria and depression, and was experiencing racing thoughts. *Id.* Dr. Rabin diagnosed Plaintiff as having an "acute manic episode." AR 414. The next morning, Plaintiff escaped VillaView by climbing a fence. AR 429. He returned home, and was

---

[1] Citations to page numbers in the parties' submissions refer to those assigned by the ECF system.

brought to Mesa Vista Hospital the same day. AR 237. Upon admission, he was noted to be emotionally labile and somewhat agitated, and he reported having "depressive and specific suicidal thoughts." AR 239. While at Mesa Vista, Plaintiff experienced some visual hallucinations, which were related to his medications. AR 240. During the hospitalization, Dr. Rabin observed that Plaintiff was making fair social contact with the other patients and played a game of basketball with another patient. AR 239. By the time Plaintiff was discharged, approximately two weeks after his admission, Plaintiff was functioning on the open unit, "looking forward to outpatient treatment," and was thinking about going away to college in the fall. AR 240.

While hospitalized, Plaintiff was evaluated by Dr. Raymond Fidaleo. AR 242-245. Plaintiff presented as "extremely sedated" during the evaluation with rambling speech, and reported visual and auditory hallucinations. AR 243-44. Dr. Fidaleo concluded Plaintiff was experiencing a bipolar manic episode. AR 244. Plaintiff was later evaluated at the hospital by Dr. James McClure, Jr. AR 246. He determined that Plaintiff had bipolar affective disorder. *Id.* In support of this conclusion, Dr. Fidaleo cited Plaintiff's hallucinations and "transient paranoid ideation," racing thoughts, lability of mood, family history, and the fact that he was "improving rapidly on lithium and neuroleptic medication[.]" *Id.* Dr. McClure agreed with continuing the current treatment "until his moods are essentially stabilized." *Id.* He anticipated "continued rapid improvement." *Id.*

Dr. J. Mark Thompson was Plaintiff's psychiatrist from fall 1989 to spring 1991. AR 248, 292. He treated Plaintiff for bipolar disorder and used several medications, but the response to treatment was limited. AR 292. In a letter dated March 6, 2012, Dr. Thompson indicated that when Plaintiff was under his care he "was very limited in his capacity to work or apply himself to academic work." *Id.*

On April 7, 1997, Dr. Rabin wrote a letter to Grossmont College stating he was Plaintiff's treating physician, and verified that Plaintiff was "mentally fit and competent[,]" appeared stable, and "has the capacity to function as an allied health

professional." AR 471.  A 1998 treatment note from Dr. Rabin indicates he encouraged Plaintiff to pursue the prosthesis field.  AR 447.  On January 10, 1999, Dr. Rabin wrote a letter to HealthSouth on Plaintiff's behalf stating that he had been treating Plaintiff for Mood Disorder Not Otherwise Specified, and he believed there were no restrictions or limitations on Plaintiff's employment.  AR 470.

On March 8, 2012, Dr. Rabin submitted a letter stating that Plaintiff's bipolar disorder prevented him from working prior to his twenty-second birthday.  AR 293.  Dr. Rabin described symptoms such as agitation, inability to concentrate, racing thoughts, rapid and drastic mood changes, and inappropriate and dysfunctional behavior patterns. *Id.* He stated Plaintiff's work history between 1989 and 1999 was "brief and fleeting or unsuccessful," and concluded by stating "from June of 1989 through the mid 1990s, [Plaintiff] fully meets the criteria established by the Social Security Administration as a Disabled Adult Child[.]" *Id.*

### D.    Relevant Testimony from the Hearing

The ALJ held a hearing on August 16, 2012.  A psychiatrist, Dr. Mark Zink, testified at the hearing.  AR 34-46.  Although he did not specifically remember Plaintiff, Dr. Zink recalled some of the details of his case after speaking with Plaintiff.  AR 35.  Dr. Zink thought he may have treated Plaintiff seven years prior to the hearing; he remembered a client who wanted to be a doctor and who was very disturbed and hopeless about his future. *Id.*  Dr. Zink also vaguely remembered Plaintiff's mother being involved and her concern about his treatment.  AR 36.  From his recent conversations with Plaintiff, Dr. Zink felt that he had an inflated sense of self, poor judgment and impulse control, and Dr. Zink predicted he would not be able to keep a job.  AR 38. Although Dr. Zink treated Plaintiff later in his life, Dr. Zink testified he didn't think his "condition started the day he walked into [his] office seven years ago[.]"  AR 39. Plaintiff was unable to obtain the records from the clinic where he treated with Dr. Zink; the records were either lost or destroyed by the clinic.  AR 45.

Dr. Rabin also testified at the hearing.  AR 50-78.  He testified that he was the first

to document Plaintiff's symptoms of mania, and had arranged for his admission to the hospital. AR 51-52. Dr. Rabin stated that Plaintiff was psychotic and hallucinating while in the hospital. AR 54. Plaintiff improved with medication while in the hospital, but experienced side effects. *Id.* Dr. Rabin said he was in "pretty good" condition when he was discharged, and would have been able to function in a job where he did not have to interact with others. AR 57, 68. Dr. Rabin saw Plaintiff a few times after that, and filled out some paperwork on his behalf. AR 58, 60-61. He said Plaintiff was functioning better when he started college than he was presently, and at that time he would have been able to function in a job where he would not have to deal with people. AR 65-66, 68. Dr. Rabin remembered Plaintiff as being moody, unstable, and wanted to do types of work that he "just wasn't able to do[.]" AR 72. Upon examination by Plaintiff at the hearing, Dr. Rabin recalled Plaintiff's many failed attempts to keep a job, and recalled Plaintiff's bipolar disorder as severely hampering his ability to sustain work or to train for work prior to his twenty-second birthday. AR 75, 77-78.

A third doctor, Dr. Smith, was subpoenaed to testify at the hearing. AR 47. Plaintiff testified he treated with Dr. Smith in 2000 and 2001, but Dr. Smith had no recollection of Plaintiff, and his office was not able to locate treatment records from that time period. AR 47-49.

Plaintiff testified that he is disabled due to his bipolar I disorder. AR 33. He also has generalized anxiety disorder and fibromyalgia. *Id.* Plaintiff stated that he dropped out of UCLA twice, and "dropped out and got kicked out" of Grossmont College. AR 62. He eventually earned a degree from UCLA in 1995. AR 63. Plaintiff testified about his treatment with Dr. Thompson and the medication issues he had under his care. AR 78-79. He indicated he is still trying to find the right medication, and still has issues staying employed. AR 79. Plaintiff asserted that the difficulty in remaining employed was not only due to "personality clashes," but also due to depression, restlessness, and racing thoughts. AR 80. He stated that working alone would not have solved his issues because of his overall mental instability. *Id.*

A vocational expert testified at the hearing. AR 81-82. The ALJ asked her for examples of "non-public, minimum contact with others, unskilled jobs at the light level[.]" AR 81. She provided the options of room cleaner, sorter, and packer. *Id.* These options did not take into account an individual with a severe mental illness. AR 82.

### E.   ALJ's Written Decision

The ALJ issued a written decision on September 28, 2012. AR 13-21. The ALJ found that Plaintiff's alleged disability onset date, July 1, 1989, occurred before he reached the age of twenty-two years old, and that he had not engaged in substantial gainful activity since the alleged onset date. AR 15. The ALJ concluded that Plaintiff had the severe impairment of bipolar disorder. *Id.* The ALJ next addressed whether this impairment met or equaled one of the impairments listed in 20 C.F.R. § 404 Subpart P, Appendix 1. AR 16. In analyzing this issue, the ALJ concluded that Plaintiff had mild restriction in daily living, moderate difficulties in social functioning, and moderate difficulties with respect to concentration, persistence or pace. *Id.* He also had one episode of decompensation. *Id.* These issues did not meet the necessary criteria, and the ALJ concluded Plaintiff did not meet or equal a listing. *Id.*

The ALJ then considered whether there is "an underlying medically determinable physical or mental impairment," and whether that impairment "could reasonably be expect to produce [Plaintiff's] pain or other symptoms." AR 17. The ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." AR 18. Next, the ALJ evaluated Plaintiff's statements about the "intensity, persistence, and limiting effects" of his symptoms, and found them "not fully credible to the extent they are inconsistent" with his RFC. *Id.*

The ALJ determined that objective medical evidence in the record did not support Plaintiff's allegations of a disabling mental impairment prior to turning twenty-two years old. *Id.* The ALJ noted that there was "very little treatment evidence" from the time period in question, the evidence showed that Plaintiff "had a relatively quick well

response to medication treatment," and Plaintiff was able to attend college after his hospitalization, although he dropped out twice. *Id.* The ALJ noted Plaintiff made "fair social contact with other patients and was even playing basketball with another patient" while he was hospitalized. *Id.* The medical record reflected that Plaintiff improved rapidly on lithium and neuroleptic medication, had more coherent speech, was no longer hyperactive and impulsive, and "had no obvious psychotic symptoms." *Id.* The ALJ concluded that Plaintiff's bipolar symptoms "responded well to medication and...he retained the capacity to perform up to a wide range of unskilled work tasks that required no interaction with the public and no more than minimum contact with others." *Id.*

The ALJ reviewed Dr. Rabin's testimony and 2012 medical source statement and gave them little weight, due to the fact that Plaintiff's condition improved "rapidly" with lithium and the fact that he was able to go away to college. AR 19. The ALJ stated that Dr. Rabin provided no treatment records from the relevant period to support his opinion that Plaintiff was unable to sustain any work dating back to July 1989.[2] *Id.* The ALJ also pointed out Dr. Rabin's 1997 letter indicating Plaintiff was "mentally fit, competent, and stable[,]" his 1998 treatment note indicating Plaintiff had "good motivation," and his 1999 letter stating that Plaintiff "had no restrictions or limitations on his employment." AR 20.

The ALJ considered the letter from Dr. Thompson that opined Plaintiff was very limited in his capacity to work while under his care from 1989 to 1991. *Id.* This opinion was given little weight because it was not accompanied by progress notes to support his conclusions, and it was contradicted by evidence from the relevant period that Plaintiff's symptoms were managed by medication and Plaintiff was able to go away to college. *Id.*

The ALJ also indicated that Plaintiff was not fully credible because his described activities of daily living were not "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 18. Specifically, the ALJ again

---

[2] It is unclear whether the ALJ considered the fact that Dr. Rabin authored treatment notes during Plaintiff's hospitalizations.

noted Plaintiff was able to attend college, although he had to drop out twice. *Id.* In 1998, Plaintiff was "going to interviews, playing tennis, forcing himself to socialize and had good motivation[.]" AR 19. At that time, Dr. Rabin encouraged Plaintiff to pursue the prosthesis field. *Id.*

The ALJ also noted that, although Plaintiff's work activity prior to his twenty-second birthday did not constitute substantial gainful activity, it indicated daily activities greater than Plaintiff reported. *Id.* The ALJ rejected a third party statement from Plaintiff's friend because it covered a time period after the period of adjudication, there were several things the friend did not know about Plaintiff, and most of the report stemmed from what Plaintiff told him and displayed for him. *Id.* As discussed above, the ALJ did not find Plaintiff fully credible, and found that the friend's statements were contradicted by the evidence in the record.

The ALJ ultimately concluded that, prior to attaining twenty-two years of age, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), and retained the capacity for unskilled work tasks "in a work environment that required no interaction with the public and no more than minimal contact with others." AR 17. The ALJ then adopted the vocational expert's opinion that Plaintiff could have worked as a room cleaner, a sorter, or a packer. AR 21. Accordingly, the ALJ concluded that Plaintiff was not disabled prior to his twenty-second birthday and therefore not entitled to Disabled Adult Child benefits. *Id.*

## II.   ANALYSIS

### A.   Standard of Review Regarding Substantial Evidence

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 599 (9th Cir.

1999). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 359 F.3d at 1193. Further, when medical reports are inconclusive, resolution of conflicts in the testimony and questions of credibility are the exclusive functions of the agency. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

When an individual applies for Disabled Adult Child benefits, he must show that he was disabled "continuously and without interruption beginning before [his] twenty-second birthday until the time [he] applied for child's disability insurance benefits." *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996). In Plaintiff's case, he must show he was disabled prior to December 21, 1992, and continuously up until June 20, 2011. A period of non-disability within that time frame may defeat a claim. *Vicari v. Astrue*, No. C 09-5238 SI, 2012 WL 761686 at *4 (N.D. Cal. Mar. 8, 2012).

**B.   Assertions of Error**

In challenging the ALJ's denial of benefits, Plaintiff argues that the ALJ erred by improperly rejecting the opinions of Drs. Rabin, Thompson, and Zink. (Dkt. No. 21-1 at 9.)

Where a treating doctor's opinion is not contradicted by another doctor, the Commissioner can only reject the treating doctor's opinion for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons based on "substantial evidence" in order to properly reject a treating physician's opinion. *Id.* The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. The opinion of an examining physician alone can constitute "substantial evidence" because it rests on an independent examination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ is not required to accept any physician's opinion that is conclusory, brief, and unsupported by

clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Finally, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 1. Rejection of Dr. Rabin's Opinion

In arguing that the ALJ improperly rejected Dr. Rabin's opinion, Plaintiff makes the following statement:

> ALJ Godfrey rejected Dr. Rabin's opinion because [Plaintiff's condition improved rapidly with lithium]. AR 19. Dr. Rabin has explained that by [its] nature, bipolar [disorder] is a waxing and waning condition.

(Dkt. No. 21-1 at 9.) Later in the motion, Plaintiff states the standard law outlined above regarding the evaluation of medical opinions. *Id.* at 10. Although unclear, the Court presumes Plaintiff is arguing that the ALJ did not provide proper reasons for rejecting Dr. Rabin's 2012 opinion that Plaintiff met the criteria for Disabled Adult Child benefits. Defendant counters that the ALJ provided sufficient reasons for rejecting Dr. Rabin's opinion. (Dkt. No. 23 at 4-6.)

Contrary to Plaintiff's assertion, the ALJ gave little weight to Dr. Rabin's opinion for more reasons than just Plaintiff's improvement on lithium. Specifically, the ALJ cited Plaintiff's collegiate achievements, Dr. Rabin's 1997 statement that Plaintiff was mentally fit, competent, appeared stable, and had the ability to function as an allied health professional. AR 20. He also cited to Dr. Rabin's 1999 statement that he believed there were "no restrictions or limitations on [Plaintiff's] employment." *Id.* The ALJ took note of the fact that Dr. Rabin indicated in a 1998 treatment note that he encouraged Plaintiff to pursue the field of prosthesis, implying that Plaintiff was able to work. *Id.*

A discrepancy in a doctor's opinions and observations constitutes "clear and convincing evidence" for not relying on that doctor's opinion. *Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Although an ALJ cannot simply parse out evidence that supports his conclusion, *see Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984), there is more than one isolated note in the record. These are unequivocal statements over the course of two years affirming that Plaintiff is able to

work. There is also little evidence in the record to dispute Dr. Rabin's assertions that Plaintiff was able to work at the time these letters and treatment notes were written.

Even if the ALJ should have credited Dr. Rabin's opinion that Plaintiff was unable to work prior to his twenty-second birthday, in order to be eligible for Disabled Adult Child disability benefits a claimant must show a continuous and uninterrupted disability from before his twenty-second birthday up until the date of application for benefits. *Smolen*, 80 F.3d at 1280. Although Dr. Rabin opined in 2012 that Plaintiff was disabled prior to his twenty-second birthday due to Bipolar I Disorder, and that the illness continues to be disabling (AR 293), the records described above directly contradict this opinion with respect to Plaintiff's abilities in the late 1990s. There is little in the record to dispute the assertions that Plaintiff was able to work during this time; therefore, Plaintiff is unable to demonstrate a continuing and uninterrupted disability beginning prior to December 21, 1992, and lasting up until June 20, 2011.

Accordingly, this Court finds that the ALJ's rejection of Dr. Rabin's opinion that Plaintiff was unable to work was based on substantial evidence in the record and is free from legal error.

2. <u>Rejection of Dr. Thompson's Opinion</u>

Plaintiff next argues that Dr. Thompson's opinion that he was limited in his capacity to work was improperly rejected. (Dkt. No. 21-1 at 9.) Plaintiff appears to believe that the ALJ rejected the opinion because his symptoms were "very well managed with medication," and points out Dr. Thompson stated that his response to treatment was limited. *Id.* However, this is not the sole reason Dr. Thompson's opinion was rejected. The ALJ also noted there were no progress notes to support Dr. Thompson's conclusion. AR 20. As previously discussed, an ALJ is not required to accept a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Even if the ALJ were to accept Dr. Thompson's opinion about Plaintiff's abilities when he was under his care, Dr. Thompson has not treated Plaintiff since 1991. AR 292. Plaintiff would still need to demonstrate he continued to be disabled for the

following twenty years and, as noted in the previous section, there is evidence in the record that Plaintiff was not continuously disabled during that entire time period.

Accordingly, this Court finds that the ALJ's rejection of Dr. Thompson's opinion is supported by substantial evidence in the record and is free from legal error.

### 3. Failure to Address Dr. Zink's Testimony

Finally, Plaintiff argues that the ALJ erred in not addressing or specifically rejecting Dr. Zink's opinion. (Dkt. No. 21-1 at 9.) Defendant points out that Dr. Zink had no clear memory of treating Plaintiff or any treatment notes, and therefore his testimony had no probative value. (Dkt. No. 23 at 7.)

"[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ is only required to "explain why significant probative evidence has been rejected." *Vincent on behalf of Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, Dr. Zink testified that he had a recollection of someone who, like Plaintiff, had wanted to be doctor but felt hopeless about his future, and that he was "pretty sure it was [Plaintiff]." AR 35. He also had a "vague recollection" about Plaintiff's mother being involved. AR 36. Dr. Zink did not remember other scenarios described by Plaintiff. AR 40-46. There were no records, and Dr. Zink testified that without the records he could not "provide many details or particulars." AR 37. He testified he would have treated Plaintiff in approximately 2005. AR 35.

It is evident that Dr. Zink's testimony is neither significant nor probative. He had no specific recollection of Plaintiff, only of a patient with the same hopelessness of not being able to be a doctor. There are no records or treating notes, and although he felt at the time of the hearing that Plaintiff was unemployable (AR 46), that does not address Plaintiff's abilities during the time period in question. Accordingly, the ALJ was not required to address his testimony, and declining to do so does not amount to error.

///

## III. CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits is supported by substantial evidence and is free of legal error. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment (dkt. no. 21) be **DENIED** and that Defendant's cross motion for summary judgment (dkt. no. 23) be **GRANTED**.

The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than **June 23, 2014,** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 30, 2014.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: June 9, 2014

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court